VOIGT, Respondent, v. VOIGT, Appellant.

*October 28—November 26, 1963.*

For the appellant there was a brief and oral argument by *George Voigt, in pro. per.*

*Laurence W. Hall* of Madison, for the respondent.

HALLOWS, J.    The parties were married in June of 1926, and two children, now adults, were born of the marriage. Very few facts are given of the married life of these parties prior to 1949. About 1949 the parties moved to Madison and the defendant obtained employment as a traveling salesman. Generally from that time on the defendant returned home for Christmas and Easter, four or five weekends during the year and one or two weeks on his vacation. During this time and prior to the commencement of this suit he sent the plaintiff monthly allowances varying from $120 in the earlier years to $150 in the later years. In addition he paid on occasions a few bills, and made monthly payments on a mortgage on the home and paid the taxes. Other than this he apparently was not much concerned about the family and the plaintiff was forced to work to meet the needs of the family.

The basic grounds for the cruel-and-inhuman-treatment charge centered around the stinginess and the penuriousness of the defendant, his lack of love and affection, and his action in informing relatives the plaintiff was suffering from a mental condition. The appellant's defense consists of claiming his wife demanded more money than he was able to give her; of his honest belief his wife had a mental condition which was the root of the family discord and his duty was to seek help from those he thought might be able to help solve the family difficulties. In defense to the charge of his failure to exhibit any love and affection, the defendant admits of some loss of luster in the autumn of life and of the loss of

some degree of attraction but insists his love and affection for the plaintiff is positively unlimited and sincere. The plaintiff relies on the old adage, "Actions speak louder than words."

The trials and tribulations of the two children after graduating from university were a source of serious concern and emotional upset to the parties. The daughter had an unfortunate marriage and the son an affair which indirectly led to his confinement in the Mendota mental hospital. The solution of the son's problem was a source of disagreement between the parties. After this action was commenced the defendant became a weekly outpatient at Mendota State Hospital and has sought help for his family problems from clergymen, doctors, social workers, and has also contacted a district attorney, the attorney general, and the governor.

While many of the acts charged against the defendant are venial and standing alone do not amount to cruel and inhuman treatment, nevertheless his conduct taken as a whole falls within that not-too-well-defined area called "cruel and inhuman treatment" as a ground for divorce. While there is no yardstick definition of cruel and inhuman treatment, the phrase has been construed to include treatment which impairs or is calculated to impair the health of a party or words and conduct which naturally cause wounded feelings resulting in grievous mental suffering or which render impairment of health probable, thus making the marriage state intolerable and further efforts to perform the duties of the marriage state dangerous or unsafe.[1] Frequently, as here, no one act in and of itself is sufficient, but a course of conduct taken as a whole reaches the point of being cruel and inhuman treatment.

[1] *Banks v. Banks* (1916), 162 Wis. 87, 155 N. W. 916; *Mayhew v. Mayhew* (1942), 239 Wis. 489, 1 N. W. (2d) 184; *Gordon v. Gordon* (1955), 270 Wis. 332, 71 N. W. (2d) 386.

It would serve no good purpose to delineate the tragedy of the parties' married life. The thrust of the appeal is not centered so much on the nonexistence of an intolerable situation as it is on divorce as a solution. A family in the defendant's view functions as an indispensable and unique agent of socialization in the training of children for adulthood and the family as a unit must learn ways of becoming the most-suitable place in society in which a member can rightfully seek temporary respite and shelter from some intolerable crises which may befall him. The breaking up of the family by divorce which destroys the natural relationship between parents and children is not a solution and if an errant spouse repents, he should be given the opportunity to work out a solution of the problem which theretofore was insoluble.

We believe the defendant is entirely sincere in his philosophy of family life, that divorce is destructive and not a social remedy for the ills of either his family or other families. However, his arguments based upon the behavioristic sciences are more properly addressed to the legislature which, in providing for divorces on certain grounds, has determined the public policy in that area of social life. The defendant complains the trial court erred in failing to take into consideration that this marriage, if given a chance, could be saved. But the defendant's ability to save his marriage requires the willing co-operation and a desire on the part of the plaintiff. The time for such a reconciliation on the basis advocated by the defendant was considered by the trial court to have long passed, and since the plaintiff had a legal ground for a divorce she was entitled to the judgment. We have read the transcript of the testimony and while it does not show any shocking grounds of cruel and inhuman treatment, we cannot hold the trial court committed error and we must, therefore, affirm the judgment.

*By the Court.*—Judgment affirmed.