Motion to dismiss appeal submitted April 17, denied April 18, 1956,
submitted on briefs May 29, 1957, affirmed June 19,
petition for rehearing denied September 6, 1957

## HINCKLEY *v.* HINCKLEY

295 P. 2d 1105
312 P. 2d 588

Larry Landgraver, Portland, for the motion.
F. Leo Smith, Portland, contra.

PER CURIAM.

The respondent, plaintiff in the court below, has moved for a dismissal of appeal from a decree of divorce in his favor. Two grounds are assigned in support of the motion, first, that the surety on the undertaking on appeal has not qualified in an adequate sum; and, second, that the appellant against whom the decree of divorce was granted has lost her right to appeal by accepting the benefits of a part of the decree. We will consider the second ground of the motion first.

The record discloses the following: The case was tried sometime prior to December 20, 1955. On that day the court, in a memorandum, announced its decision to grant the plaintiff a decree of divorce and to allow the defendant $300.00 attorney's fee in addition to $150.00 already allowed. Before the entry of an order in accordance with such decision the plaintiff paid to the defendant said sum of $300.00. On January 16, 1956, the court entered an order allowing the defendant the sum of $300.00 as attorney's fee, the plaintiff filed a motion that the court required the defendant to return to the plaintiff the sum of $300.00 theretofore paid, and the court entered a decree granting the plaintiff an absolute divorce, and further ordering that the defendant "is hereby awarded judgment of $300.00 against the plaintiff as and for the attorney's fees as provided in the order heretofore signed." On January 17 the court entered an order denying the plaintiff's motion to require the defendant to return the $300.00.

■ The general rule is that a defeated litigant cannot accept a part of the benefits of the judgment and appeal from the remainder. *West v. Broadwell,* 124 Or 652, 265 P 783. There are exceptions to this rule, however, and one of them is the following, as stated in the annotation in 169 ALR at p 1003:

> "* * * Under the prevalent modern practice, if the counsel fee is awarded the wife as a necessary item of support up to the effective date of the divorce, and its amount is discretionary with the trial court, a wife appealing on other grounds is not barred by the acceptance."

■■ Here the allowance of attorney's fee was made pursuant to ORS 107.090 (1) (a), which provides that after the commencement of a suit for dissolution of the marriage contract the court may provide by order "That the husband pay to the clerk of the court such amount of money as may be necessary to enable the wife to prosecute or defend the suit * * *." By subdivision (1) (e) of the same section it is provided "That in case default is made in the payment of any moneys falling due under the terms of an order pending suit, any such delinquent amount shall be entered and docketed as a judgment * * *." Inasmuch as in this case there was no such default, and, instead, the attorney's fee allowed by the court was paid in full, the authority to enter such a judgment never arose, and it is difficult in any event to perceive how the defendant could have waived her right to appeal by accepting payment of the attorney's fee prior to the entry of the decree of divorce from which she has appealed.

■ No argument has been presented to the court in support of the first ground of the motion, which is stated to be that the surety on the undertaking "has

qualified only in the sum of $200.00 being insufficient to insure the plaintiff-respondent a return of the moneys paid on the judgment in the event the decree is reversed.'' Plaintiff has not cross-appealed, and, from what has already been said, it is clear that there is no merit in the claim that the undertaking is insufficient.

The motion will, therefore, be denied.

## ON THE MERITS

Leo Levenson and Larry Landgraver, Portland, filed a brief for respondent.

WARNER, J.

The defendant, Josephine O. Hinckley, appeals from a divorce decree in favor of the plaintiff, John E. Hinckley.

John and Josephine were married at Eugene, Oregon, in July, 1946. No children were born to this union and there are no property rights to be adjudicated.

In September, 1953, Josephine instituted a suit for separate maintenance and support. She secured a favorable decree in that matter on the thirtieth day of October, 1953.

While the parties were still living separate and apart, pursuant to the decree of 1953, John instituted this suit for divorce in 1955, alleging as grounds cruel and inhuman treatment and personal indignities rendering his life burdensome. In the catalogue of indignities (but not as a separate cause of action) he includes allegations of two separate acts of adultery with a party therein named.

Josephine, in her answer, denies the allegations of cruel and inhuman treatment which necessarily includes the allegations of adultery. She makes three separate and further answers of no importance to this appeal. Among other things, she pleads the existence of the decree of separate maintenance and innumerable departures from the ways of marital rectitude on the part of the plaintiff. Many of these relate to matters occurring prior to the decree of 1953. She asks for no relief except for attorney's fees and costs.

■ Appellant's first assignment of error claims that the circuit court acquired no jurisdiction because of the

want of an appearance by the district attorney as required by ORS 107.040.

The appellant is concluded on her first assignment by *Costello v. Costello,* 120 Or 439, 441, 251 P 303. In the Costello case the deputy district attorney assigned the duty to appear for his superior in divorce suits in Multnomah County, in response to a charge that there had been no appearance by the district attorney, made an affidavit after trial and decree "to the effect that he did appear and discovered that the case was being defended in good faith and for that reason did not remain through the trial." (120 Or at 441) We there held the affidavit was sufficient to support the record of an appearance by that official. We note that Miss Zimmerman, a deputy in the office of the District Attorney for Multnomah County, makes an affidavit here which is almost identical with that in the Costello case.

We think the instant record sufficiently discloses an appearance by the district attorney.

Appellant's second and last assignment of error is addressed solely to what she claims to be the insufficiency of evidence necessary to sustain the charge of adultery alleged in plaintiff's second amended complaint where, as we have noted, it is pleaded as one of the charges of cruel and inhuman treatment. She gives no recognition to other testimony offered in support of the cruel and inhuman treatment charge nor does she discuss her unusually friendly, frequent and markedly indiscreet relations with the party accused as her paramour with reference to the possibility of having probative value in support of plaintiff's charge of marital cruelty.

We have examined the record with great care and we are persuaded that the evidence offered as proof

of adultery when tested under the strict rules laid down in *Parsons v. Parsons,* 197 Or 420, 253 P2d 914 (1953) and *Jenkins v. Jenkins,* 103 Or 208, 221, 204 P 165 (1922) is insufficient to support a decree of divorce on that ground. In view of our conclusion that the decree should be affirmed for other reasons, we find it unnecessary to encumber the record with any part of the unsavory testimony which suggested the probability of acts of adultery. Suffice to say that much of the evidence in the record which pointed to such a meretricious relationship on the part of defendant and her correspondent, while insufficient to prove guilt, nevertheless, reveals conduct out of line with concepts of marital loyalty and of such frequency and boldness that it has probative value supporting plaintiff's charge of defendant's cruel and inhuman treatment.

Legal cruelty exists in many cases where a spouse's associations with other persons of opposite sex are improper and degrading, especially when such acts are flaunting in character and a source of vexation or humiliation to the other member of the marital union. Keezer, Marriage & Divorce (3d ed) 435, § 370; 17 Am Jur 191, Divorce and Separation § 84 (and the 1956 Cumulative Supplement thereto at p 42); 27 CJS 551, Divorce § 28. Also see Annotations 157 ALR 631 for editorial comment and cases concerning conduct of a spouse with persons of opposite sex as cruelty justifying a divorce.

The facts and holding in *Flanagan v. Flanagan,* 188 Or 126, 143, 213 P2d 801 (1950) evidence the kind of legal cruelty decried in the foregoing citations to legal texts and encyclopedias. In Flanagan, the husband was guilty of frequent statements indicating a lack of regard and respect for marital fidelity. He knew of

his wife's suspicion that he was having illicit relations with her married sister and would insinuate, though not confess, that the suspected relationship was actually as she believed it to be. This conduct on the defendant husband's part, we held, constituted extreme cruelty under the statute, although no personal violence was inflicted or threatened, because it caused the plaintiff wife such mental suffering as to utterly destroy the legitimate ends and objects of matrimony. Also see *Goodman v. Goodman,* 165 Or 141, 149, 105 P2d 1091; *Neely v. Neely,* 162 Or 610, 611, 94 P2d 300, *Billion v. Billion,* 137 Or 622, 630, 1 P2d 1108, 3 P2d 1113; *Noble v. Noble,* 97 Or 497, 190 P 1061.

The conduct of the defendant in the case at bar in her relations with her husband's former roommate although perhaps not culminating in provable adultery, yet were attended and manifested at times and places with actions, that would convince the most naive, that the parties involved were near the brink of a breach of the Seventh Commandment. Even if we call them, less harshly, "indiscretions," yet they were indiscretions of a kind which did cause plaintiff much mental suffering and humiliation to the end that it utterly destroyed the legitimate ends and objects of their marriage.

In arriving at the conclusion we do, we attach no special legal significance to the fact that plaintiff instead of pleading adultery as a separate cause of suit, pleaded it as an additional charge in support of his basic ground of cruel and inhuman treatment.

Each party to pay his own costs.

Affirmed.